Good morning. May it please the Court, John Ballas, on behalf of Appellant Chris Ubah. This appeal involves two sets of facts and two sets of charges. The first set of facts involves a fraudulently obtained check that was paid by the California Department of Transportation for $250,000. And the second set of facts involve three credit card fraud charges. With respect to the first count, the facts are essentially that there was a fictitious invoice created on behalf of Western Pacific Specialties that was submitted to the California Department of Transportation to pay for a cleanup of a hazardous spill. That invoice was paid for an amount of $250,000, and it was sent to a PO box in Portland, Oregon. It was made out to Western Pacific Specialties. The investigation at one point led to the California Department of Transportation employees, because they figured that they would have the information to create this fictitious invoice. The government's theory and what it alleges in the indictment and what it presented at trial largely consisted of information about what happened in the bank in Portland. They allege in the indictment that Mr. Uba created a bank account, that he retrieved the check from the post office box that was from the California Department of Transportation. He deposited the check, and then he caused the check to be wired, a $140,000 wire transfer to Nigeria. When it came down to trial, they changed the facts. They proved their theory in a way that really prejudiced Mr. Uba. At trial, their new theory was it may or may not have been Chris Uba who did these acts in Portland. You said at trial. You meant during closing argument, essentially. Well, I think it's both in trial and in closing argument. They made the argument explicitly. But even as a trial, the testimony came off when it was kind of weaker than they expected in terms of the evidence that it was actually Chris Uba who did these series of acts. Then their theories that they explicitly argued in the closing argument that it may have been Chris Uba or he may have had an accomplice with him. Well, there was an identification, but that was disputed, right? There was an identification on the date of the wire transfer where the bank employee picked out Mr. Uba's photo, and the testimony was as the one most closely resembling Mr. Uba. But she did not mention that he had a scar, which he did have. It was disputed. It was disputed, right. Now, the defense put all its chips on the line on this defense that it wasn't Mr. Uba who went into the bank that made the wire transfer on August 2nd or August 3rd. And then also he wasn't the person who went into the bank on August 10th that tried to withdraw funds from the account. And they did that by cross-examining the witnesses, the two bank employees of the two dates in question. He did that by presenting witnesses in the defense case that showed that Mr. Uba had very short hair, almost clean-shaven, where one of the bank employees testified that the person who attempted to withdraw funds on the August 10th date had twisties in his hair. It was an African-American male with twisties, which she described as usually one and a half to two inches in length, and it's something that is done at a hairstylist. Mr. Uba's attorney also presented evidence through California Department of Transportation records that Mr. Uba worked on the days in question. There was some debate whether the wire transfer occurred on August 2nd or August 3rd, but Mr. Uba worked on both of those days a full day, and his time record showed he worked nine hours on each day. Counsel, let me just shortcut for one second and ask you the question that is concerning me, and that has to do with the wording of the indictment itself, because your argument is that this kind of proof and this kind of argument was a variance. But the indictment says that after each of these other things happened, Defendant Uba caused funds to be wired. Doesn't that allow him to cause it by means that would include the use of an accomplice as well as the use of mechanical devices and innocent third parties? I think in the context of the whole paragraph in the indictment, especially along with the discovery and the testimony where the government had a witness that was picking out Mr. Uba in the bank on that day. My question is about the indictment, not about the evidence. Would that indictment allow proof that that final act of transfer was caused rather than done personally and can caused include the use of an accomplice? I think the most, the best reading of it is that Mr. Uba caused the wire transfer by going into the bank, asking the bank employees to wire the funds. He cannot physically himself wire transfer the funds. He causes the wire transfer by asking the bank employees to go into the bank and then transfer the funds. I guess my ultimate question is then if he can cause it by asking bank employees to do it, why can't he cause it by asking a friend to ask the bank employees to do it? Well, I think that's a second step. It's more attenuated, and I think that is not what Mr. Uba was led to believe is what the government's theory was going to be at trial based on the whole reading of the indictment as well as the discovery and the evidence that was presented. Well, you know, but the first two sentences in that paragraph four allege direct activity by the defendant. It says he used it to open a bank account. He used the false ID to retrieve the check and to deposit the check in the account, and then it goes on to use the then caused. So those are quite different locutions, aren't they? It is different language, yes. But I still think if you read in context that the entire indictment talks about things that Chris Uba did, and I think the best reading of it is that Chris Uba went into the bank and caused the wire transfer. But every time I take a guilty plea from somebody, I explain that when the indictment says, as they always do, you caused that to be done, that doesn't mean you have to hold the envelope in your hot little hand and put it in the mailbox, you know, on mail fraud, for example. So that's a common locution, is it not, in indictments? Yeah. It's standard, really. It's often used, yeah. It's done both ways. But if you look at it, the whole indictment talks about things that Chris Uba did. Except that paragraph two, just above that, also says that the defendant, together with other persons known and unknown to the grand jury, concocted this scheme. So doesn't that put him, even if paragraph four doesn't, doesn't that put him on notice that there's a possibility of accomplices? Yeah. I think in general that he did use, may have used some accomplices, but I think with respect to the specific banking transactions, I think if paragraph four and information on paragraph three about what Chris Uba did, I think all specifically talks about acts that he did himself. And I think that's the main argument, the only argument on count one. With respect to the charges on count two, three, and four, the first argument is that the evidence was insufficient to show that Mr. Uba actually used the credit cards in effect. It's not enough to show that he applied for credit cards in someone else's name but there has to be evidence of use. The evidence on at least one count, on count four, I think there was some evidence of use because they found a credit card receipt from the fictitious account in Mr. Uba's house. But on counts two and three are different. On counts three, there is the only, those are the two credit cards in the name of Gary Wilson. There was some evidence of a note, a piece of paper found in Chris Uba's house that had the name Gary Wilson and his social security number down. And that matched the name and social security number that was in the application for the credit cards. So I think there is some evidence that he applied for the credit cards, but whether he used the credit cards, there was insufficient evidence. With respect to one of the counts, and only one of them, there was an invoice from Great Valley Ford in the amount of $950. And that Great Valley Ford $950 payment was also listed on the credit card statement for Gary Wilson. So there's one incident that you could link Mr. Uba of using the card, but totaling $950, which is less than the $1,000 threshold. On the other Gary Wilson credit card, the one in count three, there's no information, no evidence that he used the card. Neither of the cards were found in his apartment. No one identified him as using any of the cards. All they have is some information that he applied for the cards, and they have credit card statements that show that those cards were actually used. And I think not only is the – it also highlights the – my closing argument, ineffective assistance at closing argument, where Mr. Uba's counsel made no argument at all on the credit card counts. While the evidence there was – I think in some cases that may be seen as a tactical decision. But in this case, the count one, the mail fraud charge, carries a maximum penalty of five years. The credit card charges carry a maximum penalty of 10 years. They're actually probably more serious. And the evidence on the credit card counts was weaker than on the first count, on the mail fraud. Counsel, ordinarily we don't decide issues of ineffective assistance of counsel on direct appeal. What circumstances exist in this case that would cause you to ask us to make an exception to that generality? I think there's no reason you have to go outside the existing record to define that counsel is ineffective. I think in other cases, in a lot of cases, you do have to. That's why you do it in the 2255 motion. But in this situation, with respect to the two points that I bring up, he specifically told the jury he was going to ask for an eyewitness identification instruction, but forgot to or neglected to. And that was part of his whole theory of the defense and all the information he was presenting at trial, as well as failing to make any argument at all on the credit card accounts. I think you can. Well, I guess it strikes me that if the indictment clearly should have been understood to allow this indirect method of causing the wire transfers, then perhaps the whole theory of the case should have been different. And I guess I'm wondering why that shouldn't still be the subject of a separate proceeding to explore why that tactic was chosen and more things than what have been pointed out here. I think there may be other ineffective assistance arguments and claims that should be more properly developed in the 2255 motion. Well, isn't it better, then, to have it in a single proceeding in which all of the asserted deficiencies of counsel can be laid before a court for their evaluation as a totality? I think if there's enough in the existing record where the court can determine that counsel is ineffective, it should be done on direct appeal. Isn't a defendant better off by having all the ammunition presented at once in a 2255? Well, not if the court is going to reverse and direct appeal on the ineffective assistance. But I do understand the court's point, and I think there could be additional claims, additional arguments also presented in the 2255 motion. Thank you. Thank you. I'm going to reserve the rest of my time for rebuttal. Thank you. May it please the court, good morning. I'm Camille Skipper, assistant United States attorney, and I represent the United States in this case. The government's briefing in this case was fairly complete, so I'll keep my comments brief unless the court has additional questions. With regard to the issue of variance, I think the court's comments here were telling, and the points are correct, there is no allegation that Mr. Uba used a false ID in order to try to instigate a wire transfer on August 2nd. Because that is not in the indictment, there is no reason why the government would have had to prove it. Although we did call a bank employee who made an identification of Mr. Uba as the individual who came in identifying himself as James McKinney on August 2nd, we were not required to rely upon that. And in the prosecutor's closing argument, which he pointed out to the court, I mean, excuse me, to the jury, that they need not have found that on all occasions James McKinney was, in fact, Mr. Uba is consistent with the indictment and consistent with the evidence. The reason that argument needed to be made is that the defense had tried to prove that on various occasions, not those occasions that are specifically identified in the indictment, but on other occasions when banking activity had taken place, that Mr. Uba could not possibly have been in Portland on those days. Now, on the days that he was accused of being in Portland in the indictment, we were able to show that those were all Saturdays, so it was possible for him to be there. On the days when the defense said it was impossible for him to be there, we did not directly dispute that. And because the indictment did not allege that he was there on those days, we were not required to do so. So the jury's finding that he was guilty on that count should stand. There was no variance between the indictment and the evidence. Counsel, my concern, only for myself, of course, is the sufficiency of the evidence on counts two and three, and I wonder if you would go through your arguments with respect to sufficiency on counts two and three. Certainly, Your Honor. I believe counsel misspoke when he said that there was only one count where there was a credit card receipt tying the credit card to Mr. Uba. In fact, that was true for counts two and four. On count two, there was the Great Valley Ford receipt, and on count four, there was the Nilo BMW receipt. And through the evidence that was developed in trial and that is recounted in some detail in my brief, we were able to show that those charges are consistent with needs that Mr. Uba was aware that he had based on other documents found in his home and, in one case, at the Roseville BMW dealership. With regard to count three, however, we did not find any credit card receipts tying Mr. Uba to that particular account. But we did find other information which is telling. Count three, when you look at the account statements, lists many, many, many charges. Charges and cash advances taken from the card. Those charges and cash advances are not only consistent with charges that appeared on the card that was related to count two, but in several cases, which I recount in my brief and I can go to specifically, well, for example, charges at Macy's. Same day, both cards. $900 withdrawals at the Arden Fair Mall in Sacramento. These were cash withdrawals made at Macy's. $900 on the card in count two. $900 on the card in count three. Same day. Because they were both in the same name and the identifying information for the individual, Mr. Gary Wilson, using the identity of which was used to gain both cards, that ties them together. When then we found at the execution of the search warrant at Mr. Uba's home, that very information regarding Gary Wilson, his name, his correct social security number, his correct birth date, although the incorrect year, all of the information that was used to gain the cards, the first card, it appears, was applied for through the mail. The second card, after having received the first one, the second card appears to have been requested either using the Internet or on the phone. That card, which was in a way a piggyback on the first card, used the exact same information that was used to gain the first card. It went to the same address, and as I said, the charges are consistent. Same day, same place, same activity. The jury believed, based on that evidence, that Mr. Uba had the third card and had used it. Even though we didn't find any of the cards, and even though there wasn't a receipt for the card charged in count three, the jury believed that Mr. Uba had that card and used it, and we believe that their finding on that is supported by the evidence and should be accepted by this court. Okay. With regard to the argument that there was ineffective assistance of counsel, the eyewitness identification is structurally... Well, I think we're likely to consider that on a collateral proceeding. Okay. Then, as I look over my notes, I don't see anything else that I needed to respond to. However, if there are any questions by the court, I'm happy to respond to those. Thank you. Thank you, Your Honor. Just briefly on the insufficiency of the evidence in counts two and three, I think that the jury found him guilty in part because there was no argument made that he was not guilty. But the prosecutor's recitation of the facts right now pointed to no uses by Mr. Uba on count two or three basically except for the one time that I mentioned about grade value four. The rest of it is entirely circumstantial. Circumstantial, and maybe it's some evidence he applied for the credit card. There's evidence he applied for the credit card, and there's evidence that the credit card was used, but nothing that he used the credit card. There's information on another count that he had. There was someone else that opened up a P.O. box where the credit card was sent to. Is there any rule in this kind of case of which you're aware, though, that doesn't allow circumstantial evidence to be used to prove this? I think circumstantial evidence can definitely be used, but I think it has to be more circumstantial evidence than is here. It can't be just that he applied for the credit card. It has to be that there has to be some evidence he actually used it, not that he applied for it and other people used the credit card. So you're saying that that applies not only with respect to count three, on which they don't have the direct, the more direct evidence, but also to the link up between the count two and count three transactions. In count two, the only transaction is an invoice from Great Valley Ford for $950. I understand, but that's the hip bone is connected to the thigh bone kind of argument. It says, well, use it once. That leads to a reasonable inference that he used it again, and if you have the reasonable inference that he used it again on count two and there are contemporaneous transactions on count three, that's also reasonable inference. I know that when we deal with attenuated inferences, it's like multiplying fractions, but is that not permissible for a jury to do? I think that's a little bit too tenuous of a link here. I think there's a lot of other possibilities. It's not enough for a reasonable juror to conclude beyond a reasonable doubt that Mr. Uba used the credit cards in the amount of over $1,000. Thank you. Thank you, counsel. The case is to be submitted. The court will take a brief recess.
judges: Reinhardt, Graber, Shadur